JS 44   (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| BRIAN BANEY AND VICKY BANEY | JAMES R. FICK, M.D., et al |

**(b)** County of Residence of First Listed Plaintiff   <u>Centre County</u>
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   <u>Centre County</u>
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Law Office of Leon Aussprung MD, LLC
One Commerce Square
2005 Market Street, Suite 2300, Philadelphia, PA - 267-809-8250

Attorneys *(If Known)*
Unknown at this time.

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☒ 360 Other Personal Injury<br>☒ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| | | | **LABOR** | **SOCIAL SECURITY** | |
| | | | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |
| | | | **IMMIGRATION** | | |
| | | | ☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1395 bd

Brief description of cause:
Plaintiff underwent elective surgery and as a result suffered from an esophageal perforation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
07/09/2014

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse (Rev. 12/12)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Brian Beney and
Vicky Beney, h/w
      v.

                :   CIVIL ACTION
                :
                :

James R. Fick, MD, et al :   NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.       ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X)

7-8-2014      James Hockenberry, esq.    Plaintiffs
**Date**             **Attorney-at-law**          **Attorney for**

267-809-8250     888-800-5731    jh@ausspringlaw.com
**Telephone**         **FAX Number**         **E-Mail Address**

(Civ. 660) 10/02

## Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _100 Doe Drive, Port Matilda, PA 16870_

Address of Defendant: _See attached._

Place of Accident, Incident or Transaction: _Penn State, 1850 East Park Ave, Ste 112,_
_State College, PA16803 and 1800 East Park Ave, State College, PA_
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   _unknown_   Yes☐  No☐

Does this case involve multidistrict litigation possibilities?   Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
(Please specify) _EMTALA - 42 USC 1395 bd_

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _James Hockenberry, Esq._, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _July 8, 2014_  _____  _91133_
                        Attorney-at-Law          Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _July 8, 2014_  _____  _91133_
                        Attorney-at-Law          Attorney I.D.#

CIV. 609 (5/2012)

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN BANEY and | ) |
| VICKY BANEY, h/w | |
| 100 Doe Drive | ) |
| Port Matilda, PA   16870 | NO.: |
| | ) |
| Plaintiffs, | |
| | ) |
| JAMES R. FICK, M.D. | |
| Penn State Hershey Medical Group | ) |
| Penn State Hershey Neurosurgery | |
| 1850 East Park Avenue, Suite 112 | ) |
| State College, PA 16803 | |
| | ) |
| and | |
| | ) |
| JAMES E. FREIJE, M.D. | |
| Mount Nittany Physician Group | ) |
| 3901 South Atherton Street, Ste. 6 | |
| State College, PA   16801 | ) |
| | |
| and | ) |
| | |
| JOHN R. VAN KIRK, M.D. | ) |
| 625 Holmes Street | |
| State College, PA   16803 | ) |
| | |
| and | ) |
| | |
| DAVID C. STERNER, M.D. | ) |
| c/o Mount Nittany Medical Center | |
| 1800 East Park Avenue | ) |
| State College, PA   16803 | |
| | ) |
| and | |
| | ) |

CARA M. ALBARANO, CRNA                    )
c/o Mount Nittany Medical Center
1800 East Park Avenue                     )
State College, PA   16803

        and                               )

JOHN DOES 1-10                            )
c/o Mount Nittany Medical Center
1800 East Park Avenue                     )
State College, PA   16803

        and                               )

JANE DOES 1-10                            )
c/o Mount Nittany Medical Center
1800 East Park Avenue                     )
State College, PA   16803

        and                               )

ABC Corporations 1-10                     )
c/o Mount Nittany Medical Center
1800 East Park Avenue                     )
State College, PA   16803

        and                               )

MOUNT NITTANY MEDICAL                     )
CENTER HEALTH SERVICES,
INC.                                      )
d/b/a Mount Nittany Physician Group
1800 East Park Avenue                     )
State College, PA   16803

        and                               )

CENTRE COMMUNITY HEALTH
SERVICES, INC.                            )
d/b/a Mount Nittany Physician Group
1800 East Park Avenue                     )
State College, PA   16803
                                          )

and                                          )

MOUNT NITTANY
MEDICAL CENTER                               )
1800 East Park Avenue
State College, PA   16803                    )


        and                                  )

MOUNT NITTANY SURGICAL                       )
CENTER, INC.
1800 East Park Avenue                        )
State College, PA   16803
                                             )
        and
                                             )
THE MILTON S. HERSHEY
MEDICAL  CENTER, d/b/a                        )
PENN STATE HERSHEY
MEDICAL GROUP                                )
1850 East Park Avenue, Suite 112
State College, PA 16803                      )


        and                                  )

PENN STATE HERSHEY HEALTH )
SYSTEM, INC.
208 Old Main                                 )
University Park, PA   16802
                                             )
        and
                                             )
PENN STATE HERSHEY
BONE AND  JOINT INSTITUTE                    )
1850 East Park Avenue, Suite 112
State College, PA 16803                      )


        and                                  )

PENN STATE HERSHEY                    )
NEUROSCIENCE INSTITUTE
1850 East Park Avenue, Suite 112      )
State College, PA 16803

                                      )

          Defendants.

---

## CIVIL ACTION COMPLAINT

I.     INTRODUCTION

1.     This civil action involves claims of medical professional negligence as well as a violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42   U.S.C. §1395dd, as a result of medical care provided to plaintiff Brian Baney from 7/19/2012 through 7/26/2012 at Mount Nittany Medical Center in State College, Centre County, Pennsylvania.   During a neurosurgical procedure on 7/19/2012 Mr. Baney suffered serious and catastrophic injury to his esophagus which was not properly managed/stabilized during his inpatient stay at Mount Nittany Medical Center resulting in devastating permanent injuries.

II.    JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 as Plaintiffs herein are asserting a violation of federal law, to wit, EMTALA, pursuant to 42 U.S.C. §1395dd.   This Court has jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. §1367.

3.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(b)(1) and §1391(d) as defendants Penn State Hershey Medical Group and/or Penn State Hershey Medical Center and/or Penn State Hershey

Health System are corporate defendants that "reside" in the Eastern District of Pennsylvania as they have contacts within the Eastern District of Pennsylvania that would be sufficient to subject it to personal jurisdiction if the Eastern District of Pennsylvania were a separate state. Specifically, said defendants conduct regular and systematic business within the Eastern District of Pennsylvania at the following locations:

     a.   Penn State Hershey Medical Group, 775 East Main Street, Mount Joy, Lancaster County, Pennsylvania;

     b.   Penn State Hershey Children's Hospital, 2170 Noll Drive, Suite 200, Lancaster, Lancaster County, Pennsylvania;

     c.   Penn State Hershey Medical Group, 1 Continental Drive, Elizabethtown, Lancaster County, Pennsylvania; and,

     d.   Penn State Hershey Medical Group, 2494 Bernville Road, Suite 106, Reading, Berks County, Pennsylvania.

## III.  PARTIES

4.  Plaintiff, Brian Baney, is an adult individual residing at 100 Doe Drive, Port Matilda, Pennsylvania. At all times material and relevant hereto Brian Baney was the husband of Plaintiff Vicky Baney.

5.  Plaintiff, Vicky Baney, is an adult individual residing at 100 Doe Drive, Port Matilda, Pennsylvania. At all times material and relevant hereto Vicky Baney was the wife of Plaintiff Brian Baney.

6.    Defendant, James R. Fick, M.D., (hereafter "Dr. Fick"), is an adult individual and licensed professional and physician and who, as of 7/19/2012, purported to specialize in neurosurgery, and who maintains an office at c/o Penn State Hershey Medical Group, 1850 East Park Avenue, Suite 112, State College, Pennsylvania. At all times material and relevant hereto, Dr. Fick was the employee and/or agent and/or ostensible agent and/or apparent agent of defendants Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre Community Health Services, Inc., d/b/a Mount Nittany Physician Group; Mount Nittany Medical Center; Mount Nittany Surgical Center; The Milton S. Hershey Medical Center, d/b/a Penn State Hershey Medical Group; Penn State Hershey Health System, Inc.; Penn State Hershey Bone and Joint Institute; and/or Penn State Hershey Neuroscience Institute.   Plaintiffs are asserting a professional liability claim against Dr. Fick.

7.    Defendant James E. Freije, M.D., (hereafter "Dr. Freije"), is an adult individual and licensed professional and physician and who, as of 7/19/2012, purported to specialize in otorhinolaryngology, and who maintains an office at c/o Mount Nittany Physician Group, 3901 South Atherton Street, Suite 6, State College, Pennsylvania. At all times material and relevant hereto, Dr. Freije was the employee and/or agent and/or ostensible agent and/or apparent agent of defendants Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre Community Health Services, Inc., d/b/a Mount Nittany

Physician Group; and/or Mount Nittany Medical Center.   Plaintiffs are asserting a professional liability claim against Dr. Freije.

8.   Defendant John R. Van Kirk, M.D., (hereafter "Dr. Van Kirk"), is an adult individual and licensed professional and physician and who, as of 7/19/2012, purported to specialize in Pulmonology and Critical Care medicine, and who resides at 625 Holmes Street, State College, Pennsylvania, Pennsylvania. At all times material and relevant hereto, Dr. Van Kirk was the employee and/or agent and/or ostensible agent and/or apparent agent of defendants Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre Community Health Services, Inc., d/b/a Mount Nittany Physician Group; and/or Mount Nittany Medical Center.   Plaintiffs are asserting a professional liability claim against Dr. Van Kirk.

9.   Defendant David C. Sterner, M.D., (hereafter "Dr. Sterner"), is an adult individual and licensed professional and physician and who, as of 7/19/2012, purported to specialize in Anesthesiology, with a principal place of business at c/o Mount Nittany Medical Center, 1800 East Park Avenue, State College, Pennsylvania.   At all times material and relevant hereto, Dr. Sterner was the employee and/or agent and/or ostensible agent and/or apparent agent of defendants Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre Community Health Services, Inc., d/b/a Mount Nittany Physician Group; and/or Mount Nittany Medical Center.   Plaintiffs are asserting a professional liability claim against Dr. Sterner.

10.     Defendant Cara M. Albarano, CRNA, (hereafter "CRNA Albarano"), is an adult individual and licensed professional and who, as of 7/19/2012, purported to specialize as a nurse anesthetist, with a principal place of business at c/o Mount Nittany Medical Center, 1800 East Park Avenue, State College, Pennsylvania.   At all times material and relevant hereto, CRNA Albarano was the employee and/or agent and/or ostensible agent and/or apparent agent of defendants Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre Community Health Services, Inc., d/b/a Mount Nittany Physician Group; and/or Mount Nittany Medical Center and/or Dr. Fick and/or Dr. Frieje and/or Dr. Sterner.   Plaintiffs are asserting a professional liability claim against CRNA Albarano.

11.     Defendants John Does 1-10 are adult individuals and licensed professionals who provided negligent medical care and treatment to plaintiff Brian Baney during this hospitalization from 7/19/2012 until the time of his transfer from Mount Nittany Medical Center to the Penn State Hershey Medical Center, and whose names, positions, and titles are known only to defendants herein. Defendants are asserting a professional liability claim against defendants John Does 1-10.

12.     Defendants Jane Does 1-10 are adult individuals and licensed professionals who provided negligent medical care and treatment to plaintiff Brian Baney during this hospitalization from 7/19/2012 until the time of his transfer from Mount Nittany Medical Center to the Penn State Hershey Medical Center, and

whose names, positions, and titles are known only to defendants herein. Plaintiffs are asserting a professional liability claim against defendants Jane Does 1-10.

13.     Defendants ABC Corporations 1-10 are corporations, partnership, limited liability companies and/or other similar entities who, either directly and/or through their agents and/or employees, provided negligent medical care to plaintiff Brian Baney Baney during this hospitalization from 7/19/2012 until the time of his transfer from Mount Nittany Medical Center to the Penn State Hershey Medical Center, and whose names, positions, and titles are known only to defendants herein. Plaintiffs are asserting a professional liability claim against Defendants ABC Corporations 1-10.

14.     Defendant Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group is a corporation, or other business entity, organized and/or existing under the laws of the Commonwealth of Pennsylvania, and is engaged in the business of providing healthcare and services to the general public, and maintained a principle place of business 3901 South Atherton Street, Suite 6, State College, Pennsylvania, and at all times material and relevant hereto acted through its agents, servants, workmen, and/or employees, specifically including Dr. Fick, Dr. Frieje and Dr. Van Kirk, whose negligence is imputed to it. Plaintiffs are asserting a professional liability claim against Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group.

15.     Defendant Centre Community Health Services, Inc., d/b/a Mount Nittany Physician Group is a corporation, or other business entity, organized

and/or existing under the laws of the Commonwealth of Pennsylvania, and is engaged in the business of providing healthcare and services to the general public, and maintained a principle place of business 3901 South Atherton Street, Suite 6, State College, Pennsylvania, and at all times material and relevant hereto acted through its agents, servants, workmen, and/or employees, specifically including Dr. Fick, Dr. Frieje and Dr. Van Kirk, whose negligence is imputed to it. Plaintiffs are asserting a professional liability claim against Centre Community Health Services, Inc., d/b/a Mount Nittany Physician Group.

16. Defendant Mount Nittany Medical is a corporation, or other business entity, organized and/or existing under the laws of the Commonwealth of Pennsylvania, and is engaged in the business of providing healthcare and services to the general public through hospitals or other institutions and at all times material and relevant hereto maintained a principle place of business at 1800 East Park Avenue, State College, Pennsylvania, and furthermore at all times material and relevant hereto acted through its agents, servants, workmen, and/or employees, specifically including Dr. Fick, Dr. Frieje and Dr. Van Kirk, whose negligence is imputed to it. Plaintiffs are asserting a professional liability claim against Mount Nittany Medical Center.

17. Defendant Mount Nittany Surgical Center, Inc. is a corporation, or other business entity, organized and/or existing under the laws of the Commonwealth of Pennsylvania, and is engaged in the business of providing healthcare and services to the general public through hospitals or other institutions

and at all times material and relevant hereto maintained a principle place of

business at 1800 East Park Avenue, State College, Pennsylvania, and furthermore

at all times material and relevant hereto acted through its agents, servants,

workmen, and/or employees, specifically including Dr. Fick, Dr. Frieje and Dr.

Van Kirk, whose negligence is imputed to it.   Plaintiffs are asserting a

professional liability claim against Mount Nittany Surgical Center, Inc.

18.      Defendant The Milton S. Hershey Medical Center, d/b/a Penn State

Hershey Medical Group, is a corporation, or other business entity, organized

and/or existing under the laws of the Commonwealth of Pennsylvania, and is

engaged in the business of providing healthcare and services to the general public,

and maintained a principle place of business at 1850 East Park Avenue, Suite 112,

State College, Pennsylvania, and at all times material and relevant hereto acted

through its agents, servants, workmen, and/or employees, specifically including

Dr. Fick, whose negligence is imputed to it. Plaintiffs are asserting a professional

liability claim against The Milton S. Hershey Medical Center, d/b/a Penn State

Hershey Medical Group.

19.      Defendant Penn State Hershey Health System, Inc., is a corporation,

or other business entity, organized and/or existing under the laws of the

Commonwealth of Pennsylvania, and is engaged in the business of providing

healthcare and services to the general public through hospitals or other institutions,

specifically for the clients, patients, customers and other persons at Mount Nittany

Medical Center, and at all times material and relevant hereto maintained a principle

place of business at 208 Old Main, University Park, Pennsylvania, and furthermore

at all times material and relevant hereto acted through its agents, servants,

workmen, and/or employees, specifically including Dr. Fick, whose negligence is

imputed to it. Plaintiffs are asserting a professional liability claim against Penn

State Hershey Health System, Inc.

20.     Defendant Penn State Hershey Bone and Joint Institute is a

corporation, or other business entity, organized and/or existing under the laws of

the Commonwealth of Pennsylvania, and is engaged in the business of providing

healthcare and services to the general public, and maintained a principle place of

business at 1850 East Park Avenue, Suite 112, State College, Pennsylvania, and at

all times material and relevant hereto acted through its agents, servants, workmen,

and/or employees, specifically including Dr. Fick, whose negligence is imputed to

it. Plaintiffs are asserting a professional liability claim against Penn State Hershey

Bone and Joint Institute.

21.     Defendant Penn State Hershey Neuroscience Institute is a corporation,

or other business entity, organized and/or existing under the laws of the

Commonwealth of Pennsylvania, and is engaged in the business of providing

healthcare and services to the general public, and maintained a principle place of

business at 1850 East Park Avenue, Suite 112, State College, Pennsylvania, and at

all times material and relevant hereto acted through its agents, servants, workmen,

and/or employees, specifically including Dr. Fick, whose negligence is imputed to

it. Plaintiffs are asserting a professional liability claim against Penn State Hershey Neuroscience Institute.

IV.   FACTS

22.   On 7/19/2012 Plaintiff Brian Baney, (hereafter "Plaintiff") was admitted to the service of James R. Fick, M.D., a neurosurgeon, at Mount Nittany Medical Center, State College, Pennsylvania, for elective surgery.

23.   Dr. Fick was scheduled to perform the following procedures on 7/19/2012: repeat C7-T1 anterior cervical discectomy; removal of C7-T1 anterior cervical instrumentation; repeat allograft arthrodesis, C7-T1; repeat anterior cervical instrumentation C7-T1; and electrophysiological spinal cord monitoring.

24.   The Plaintiff's pre-operative diagnoses were Klippel-Feil syndrome; cervical spondylosis; history of four previous cervical operations; and failed C7-T1 anterior cervical discectomy and fusion leading to severe bilateral radiculopathies, ventral spinal cord compression and paraparesis.

25.   The Plaintiff was intubated *via* fiber-optic intubation by the anesthesia team, including CRNA Albarano and/or Dr. Sterner, and prophylactic intravenous antibiotics were administered.

26.   James E. Frieje, M.D. was to perform a scheduled injection of Plaintiff's paralyzed left-sided vocal cord prior to the surgical procedures noted *supra* to be performed by Dr. Fick, however, this procedure was abandoned and Dr. Fick began his surgery at approximately 9 a.m.

27.    A nasogastric ("NG") tube was placed (after several attempts) by the anesthesia team, including CRNA Albarano and/or Dr. Sterner immediately prior to Dr. Fick's closing (at the instruction of Dr. Fick).

28.    Following the performance of the surgical procedures and after the placement of the foregoing NG tube, Dr. Fick "meticulously inspected" the surgical field and was able to see "clear plastic."

29.    According to the anesthesia record, prior to closure Dr. Fick visualized the esophageal stethoscope in the operative field.

30.    Dr. Fick "determined that there was a perforation in the esophagus" and defendant Dr. Frieje was called.

31.    Dr. Frieje noted a complex tear in the cervical esophagus with a slight transverse but mostly vertical component.

32.    Dr. Frieje then proceeded with attempted closure of the tear esophageal tear using 4-0 Vicryl.

33.    Dr. Fick assisted Dr. Frieje in the attempted repair of the esophageal tear.

34.    Dr. Fick and/or Dr. Frieje then placed another NG tube themselves and a Jackson-Pratt drain and Mr. Baney was transferred to the recovery room and then to the Intensive Care Unit.

35.    Following the surgical procedures, Dr. Fick requested a pulmonary consultation from defendant John R. Van Kirk, M.D., (hereafter "Dr. Van Kirk"), who saw Mr. Baney in the "late afternoon" of 7/19/12.

36.    Dr. Van Kirk noted during this initial 7/19/12 "late afternoon" consultation that "[t]he patient intraoperatively had an esophageal perforation when an NG tube was attempted to be placed."

37.    Dr. Van Kirk noted that "[t]he perforation was high in and around the area of the surgery."

38.    Dr. Van Kirk further noted that "[i]t was felt that the esophagus had become adherent because of pervious surgeries to the posterior wall and thus created an impetus for subsequent perforation."

39.    At the time of Dr. Van Kirk's examination and consultation, there was "significant penumomediastinum with mediastinal widening, left perihilar airspace opacity with bibasilar opacities essentially atelectasis versus aspiration."

40.    Lastly, Dr. Van Kirk stated that "the patient has postsurgical pneumomediastinum.   At this point in time we will have to cover for appropriate mediastinitis type issues.   Antibiotics have been started.   We will continue to remain vigilant and see how things do going forward."

41.    Dr. Van Kirk again saw Mr. Baney on 7/20/2012 and he again noted that Mr. Baney's "chest x-ray continues to demonstrate pneumomediastinum."

42.    Specifically, Dr. Van Kirk stated that the "[c]hest x-ray this morning showed a little increase in interstitial edema along with pneumomediastinum."

43.    On 7/21/2012 Dr. Van Kirk again sees Plaintiff and his findings include that Mr. Baney "continues with upper airway congestion and what appears to be stridor, rhoncorous sounds that he is unable to clear and evacuate" and that

Mr. Baney was indicating "most of his current sensitivity is over the anterior aspect of his chest."

44.     Dr. Van Kirk's "impression" included that Mr. Baney's pain over the anterior chest" was "likely related to the current problems with the mediastinitis" and that this mediastinal pain "continues to be problematic."

45.     On 7/23/2012 Dr. Van Kirk again examined and consulted on Mr. Baney, at which time it was noted that Mr. Baney had continued "complaints of pain and discomfort in the chest" and that "[h]is last white count was elevated."

46.     Dr. Frieje was encouraged to potentially visualize the torn esophagus "to make sure things are otherwise intact."

47.     Dr. Van Kirk stated that there were "some secretions emanating directly from the incision."

48.     On 7/23/2012 Mr. Baney underwent a Barium Swallow confirming an active leak from the esophagus into the mediastinum; specifically, the radiologist stated this study showed "a significant leak of contrast from the esophagus. Specifically, there is pooled contrast within the soft tissues anterior to the esophagus.   This contrast extends from the esophagus at the C7 level along the surgically placed drain.   A small amount of contrast did pass into the more distal esophagus.   Incidental note was made of pneumomediastinum."

49.     Plaintiff also underwent a CT of the cervical spine on 7/23/12 which showed "extensive subcutaneous emphysema within the neck" and "a dense collection of contrast seen along the right side of the upper cervical esophagus

from the C7-T2 levels consistent with the esophageal perforation seen on the prior barium swallow."

50.     On 7/23/12 Dr. Fick noted that "there remains a hole in the esophagus" but that Dr. Frieje "does not favor a reexploration at this time."

51.     On 7/24/12 Dr. Van Kirk saw the Plaintiff and noted that "the swallowing study done yesterday identified leakage of contrast directly through the incision, thus likely confirming an esophageal fistula."

52.     Dr. Van Kirk's 7/24/12 examination revealed that Mr. Baney was bradycardic, that his surgical incision was elevated secondary to subcutaneous emphysema, that he had leukocytosis, and that the incision was not currently oozing but had "some slight discoloration."

53.     Dr. Van Kirk noted that as of 7/24/12 he, *i.e.*, Dr. Van Kirk, "remain[s] somewhat concerned about the trachea but I would address this with Dr. Frieje."

54.     On 7/24/12 Dr. Fick evaluated Mr. Baney in the ICU and stated that "Dr. Van Kirk informs me there is nothing to suggest that he has mediastinitis" and that he discussed Mr. Baney's case with Dr. Freije and Dr. Van Kirk.

55.     On 7/25/2012 both Dr. Fick and Dr. Van Kirk examined Plaintiff in the Intensive Care Unit.

56.     On 7/25/2012, Plaintiff was complaining of increasing pain along the right neck area.

57. In addition, on 7/25/2012, Mr. Baney was noted to be "ill-appearing" and "somnolent" and that he continued to have subcutaneous emphysema with crepitus along with respiratory fluctuance over his incision site.

58. Mr. Baney's lungs were notable for wheezing along with some rales on 7/25/2012.

59. Dr. Van Kirk's impression on 7/25/2012 included, *inter alia*, "continued potential complications of esophageal fistula perforation" and that "Mr. Baney appears to be doing worse than yesterday."

60. Dr. Fick noted that upon being asked by the patient and family if Mr. Baney should be transferred to a tertiary care facility, that Dr. Freije "informed them that he felt the standard approach to handling this issue was underway and the indications were that there was no evidence of any complication that would mandate additional interventions."

61. On 7/26/2012 at 5:25 a.m. Mr. Baney "developed acute onset of severe right-sided pleuritic chest pain" and was diaphoretic and experiencing shortness of breath.

62. Immediately thereafter the Hospitalist, John Coppes, M.D. ordered a stat chest CT.

63. The chest CT was interpreted as showing, *inter alia*, bilateral subcutaneous emphysema and pneumomediastinum and a perforated proximal esophagus.

64.    At 8:30 a.m. on 7/26/2012 Mr. Baney was transferred from Mount
Nittany Medical Center to a Penn State University Milton S. Hershey Medical
Center, ("the HMC"), a tertiary care facility, for "specialized care" by a *Physicians
Certification for Transfer* by Dr. Fick.

65.    Upon arrival to the HMC, Mr. Baney reported sharp pain in his right
chest that had developed over the last few days, was having difficulty breathing,
and was experiencing shortness of breath, had dysphagia and hoarseness.

66.    Mr. Baney also reported pain at 9/10 upon arrival to the HMC.

67.    The assessment of the physician performing the History and Physical
at the HMC was "c-spine surgery complicated by esophageal laceration now with
chest pain and dyspnea with concern for pneumonia and mediastinitis."

68.    A gastrogaffin swallow study was performed upon Mr. Baney's
arrival at the HMC which "demonstrated a brisk leak of gastrogafin high in the
cervical esophagus that tracked along the mediastinum into the right chest."

69.    As a result of the foregoing findings, including tachycardia and
elevated white blood cell count, Mr. Baney was emergently taken to the operative
room on 7/26/2012 where he underwent neck exploration with drainage of
infection, mediastinal debridemen and drainage, right thoracotomy with
decortication and evacuation of empyema, esophageal stent placement,
percutaneous placement of a G-tube, percutaneous placement of a J-tube extension
and tracheostomy.

70. Following the surgery Mr. Baney was kept sedated for several days.

71. Mr. Baney remained hospitalized at the HMC from 7/26/2012 through 9/14/2012 during which time he underwent additional surgery and a number of gastroscopy procedures.

72. Mr. Baney continues to the present day to undergo treatment and various procedures with multiple medical providers as a result of the injuries he suffered caused by the defendants' negligence and/or violations of the Emergency Medical Treatment and Active Labor Act, as detailed *infra*.

73. As a direct and proximate result of the negligent acts and/or omissions of the defendants and/or their violations of the Emergency Medical Treatment and Active Labor Act, as set forth in detail below, plaintiff Brian Baney suffered the following injuries and/or harm:

  a. perforation(s) in his esophagus;

  b. pneumomediastinum;

  c. mediastinitis;

  d. pneumonia;

  e. infection;

  f. esophageal fistula;

  g. permanent esophageal damage and the need for multiple surgical repairs of his esophagus;

  h. the need for multiple bronchoscopies;

  i. bronchospasm;

j.    mucoid plugging throughout the tracheobronchial tree;

k.    the need for multiple intravenous antibiotic therapy;

l.    inability to orally eat, nutritional issues, and post-operative failure to thrive;

m.    upper airway congestion with stridor;

n.    tracheo-esophageal fistula;

o.    the need for a G-tube;

p.    the need for a J-tube;

q.    subcutaneous emphysema;

r.    great pain and suffering;

s.    pleural effusion;

t.    atelectasis;

u.    the need for multiple radiological tests, including xrays and CT scans;

v.    multiple gastroscopy procedures;

w.    leakage of bodily fluids and barium contrast into his mediastinum;

x.    multiple surgical and/or medical procedures, including, neck exploration;  thoracotomy; debridement; esophageal stent placement; and, esophageal stretching;

y.    multiple hospitalizations;

z.    the need for esophageal stents;

aa.    esophageal stent migration;

bb.    organ damage;

cc.    loss of life's pleasure;

dd.    the need for continuous medical monitoring and care for the remainder of his life;

ee.    the need for personal care for the remainder of his life;

ff.    scarring;

gg.    decreased mobility;

hh.    cognitive dysfunction;

ii.    inability to swallow;

jj.    sepsis;

kk.    damage to his nerves and nervous system;

ll.    wage/earnings loss;

mm.    permanent disability;

nn.    spousal loss of consortium;

oo.    all damages allowable under Pennsylvania law.

## COUNT I – PROFESSIONAL NEGLIGENCE
## BRIAN BANEY V. JAMES R. FICK, M.D.

74.    The above and foregoing paragraphs are incorporated by reference hereat as if set forth at length in their entirety.

75.    Defendant Dr. Fick has, at all times material and relevant hereto, held himself out to the public, and to Plaintiffs in particular, as a healthcare provider

who possesses special skill and knowledge in the area of neurosurgery and/or spinal surgery.

76.    Dr. Fick, as an agent, ostensible agent, employee, servant, and/or workman of all of the defendants herein, specifically including The Milton S. Hershey Medical Center, d/b/a Penn State Hershey Medical Group and/or Penn State Hershey Health System, Inc. and/or Penn State Hershey Bone and Joint Institute and/or Penn State Hershey Neuroscience Institute, failed to provide reasonable healthcare under the circumstances and his acts and/or omissions fell below the applicable standard of care required of him and his negligence and carelessness consisted of the following:

   a.    perforating Brian Baney's esophagus during the 7/19/12 surgery;

   b.    failing to timely and/or properly recognize/diagnose that Brian Baney's esophagus had been perforated in two (2) places;

   c.    failing to timely and/or properly diagnose, treat, and/or repair Brian Baney's esophageal perforation(s);

   d.    failing to consult with and or refer to a cardiothoracic surgeon regarding the esophageal perforations;

   e.    failing to immediately and/or timely transfer Brian Baney to a healthcare facility with properly-qualified cardio-thoracic surgeons on staff and/or the ability to stabilize, manage and treat the patient;

f.    failing to timely diagnosis and/or treat and/or prevent

        mediastinitis and/or infection;

g.    failing appreciate the severity of Brian Baney's post-operative

        condition in a timely manner;

h.    allowing an esophageal leak to continue to persist without

        properly treating the same, including drainage, antibiotics,

        and/or surgery;

i.     failing to consult with appropriately-qualified physician

        specialists regarding Brian Baney's esophageal perforation(s);

j.     failing to consult with appropriately-qualified physician

        specialists regarding Brian Baney's post-operative care at

        Mount Nittany Medical Center;

k.    permitting an otorhinolaryngologist to attempt a repair of an

        esophageal perforation;

l.     failing to recognize the severity of the findings of radiologic

        studies in Brian Baney's post-operative care;

m.    failing to recognize that only one esophageal perforation had

        been repaired;

n.    failing to appreciate and protect against Brian Baney's

        increased risk for perforation during the 7/19/12 surgical

        procedure;

o.    failing to properly inspect the entire esophagus prior to closure to ensure there were not additional injuries;

p.    failing to consult with anesthesia to ascertain the manner in which the esophageal perforation(s) occurred;

q.    failing to perform an intra-operative testing to ensure that Brian Baney's esophagus was properly repaired prior to closure;

r.    improperly performing the neurosurgical procedure;

s.    performing the neurosurgery without proper indications;

r.    failing to perform proper intra-operative testing and/or inspection to ensure that Brian Baney's esophagus was not leaking prior to closure;

t.    failing to ensure proper monitoring and/or treatment of Brian Baney during his post-operative care; and,

u.    instructing and/or permitting and/or not adequately supervising a non-physician to place an NG tube in a patient at high risk for esophageal injury.

77.    The carelessness and negligence of Dr. Fick, as set forth above, increased the risk of harm and/or was a substantial factor and/or factual cause in causing the injuries and damages suffered by Plaintiff Brian Baney as set forth more fully *supra* in paragraph 73.

WHEREFORE, Plaintiffs, Brian Baney and Vicky Baney demand judgment in their favor and against defendants James R. Fick, M.D.; James E. Frieje, M.D.;

John R. Van Kirk, M.D.;   David C. Sterner, MD; Cara M. Albarano, CRNA; John

Does 1-10; Jane Does 1-10; ABC Corporations 1-10; Mount Nittany Medical

Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre

Community Health Services, Inc., d/b/a Mount Nittany Physician Group; Mount

Nittany Medical Center; Mount Nittany Surgical Center; The Milton S. Hershey

Medical Center, d/b/a Penn State Hershey Medical Group; Penn State Hershey

Health System, Inc.; Penn State Hershey Bone and Joint Institute; and/or Penn

State Hershey Neuroscience Institute in an amount in excess of $75,000, plus

interest, costs, and delay damages.

## COUNT II – PROFESSIONAL NEGLIGENCE
## BRAIN BANEY V. JAMES E. FREIJE, M.D.

78.     The above and foregoing paragraphs are incorporated by reference

hereat as if set forth at length in their entirety.

79.     Defendant Dr. Freije has, at all times material and relevant hereto,

held himself out to the public, and to Plaintiffs in particular, as a healthcare

provider who possesses special skill and knowledge in the area of

otorhinolaryngology.

80.     Dr. Freije, as an agent, ostensible agent, employee, servant, and/or

workman of all of the defendants herein, specifically including Mount Nittany

Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group;

Centre Community Health Services, Inc., d/b/a Mount Nittany Physician Group;

and/or Mount Nittany Medical Center, failed to provide reasonable healthcare

under the circumstances and his acts and/or omissions fell below the applicable standard of care required of him and his negligence and carelessness consisted of the following:

       a.      failing to timely and/or properly recognize that Brian Baney suffered from two (2) esophageal perforations;

       b.      failing timely and/or properly to diagnose, treat and/or repair Brian Baney's esophageal perforation(s);

       c.      failing to timely consult with a cardiothoracic surgeon regarding the esophageal perforation(s);

       d.      failing to immediately transfer Brian Baney to a healthcare facility with properly-qualified cardio-thoracic surgeons on staff;

       e.      failing to timely diagnosis and/or treat and/or prevent mediastinitis and/or infection;

       f.      failing appreciate the severity of Brian Baney's post-operative condition in a timely manner;

       g.      allowing an esophageal leak to continue to exist without properly treating the same;

       h.      failing to consult with appropriately-qualified physician specialists regarding Brian Baney's esophageal perforation(s);

i.   failing to consult with appropriately-qualified physician specialists regarding Brian Baney's post-operative care at Mount Nittany Medical Center;

j.   attempting to repair esophageal perforation(s) without consulting with and without the assistance or guidance from a cardiothoracic surgeon;

k.   failing to recognize the severity of the findings of radiologic studies in Brian Baney's post-operative care;

l.   failing to recognize that only one esophageal perforation had been repaired;

m.   failing to appreciate and protect against Brian Baney's increased risk for perforation during the 7/19/12 surgical procedure;

n.   failing to perform proper intra-operative testing and/or inspection to ensure that Brian Baney's esophagus was not leaking prior to closure;

o.   failing to consult with anesthesia to ascertain the manner in which the esophageal perforations occurred;

p.   failing to perform an proper intra-operative testing and/or inspections to ensure that Brian Baney's esophagus was properly repaired prior to closure;

q.    failing to ensure proper monitoring of Brian Baney during his

post-operative care;

81.    The carelessness and negligence of Dr. Freije, as set forth above,

increased the risk of harm and/or was a substantial factor and/or factual cause in

causing the injuries and damages suffered by Plaintiff Brian Baney as set forth

more fully *supra* in paragraph 73.

.      WHEREFORE, Plaintiffs, Brian Baney and Vicky Baney demand judgment

in their favor and against defendants James R. Fick, M.D.; James E. Freije, M.D.;

John R. Van Kirk, M.D.;   David C. Sterner, MD; Cara M. Albarano, CRNA; John

Does 1-10; Jane Does 1-10; ABC Corporations 1-10; Mount Nittany Medical

Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre

Community Health Services, Inc., d/b/a Mount Nittany Physician Group; Mount

Nittany Medical Center; Mount Nittany Surgical Center; The Milton S. Hershey

Medical Center, d/b/a Penn State Hershey Medical Group; Penn State Hershey

Health System, Inc.; Penn State Hershey Bone and Joint Institute; and/or Penn

State Hershey Neuroscience Institute in an amount in excess of $75,000, plus

interest, costs, and delay damages.

## COUNT III – PROFESSIONAL NEGLIGENCE
## BRAIN BANEY V. JOHN R. VAN KIRK

82.    The above and foregoing paragraphs are incorporated by reference

hereat as if set forth at length in their entirety.

83.     Defendant Dr. Van Kirk has, at all times material and relevant hereto, held himself out to the public, and to Plaintiffs in particular, as a healthcare provider who possesses special skill and knowledge in the area of Pulmonology and Critical Care Medicine.

84.     Dr. Van Kirk, as an agent, ostensible agent, employee, servant, and/or workman of all of the defendants herein, specifically including Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre Community Health Services, Inc., d/b/a Mount Nittany Physician Group; and/or Mount Nittany Medical Center, failed to provide reasonable healthcare under the circumstances and his acts and/or omissions fell below the applicable standard of care required of him and his negligence and carelessness consisted of the following:

        a.      failing to timely and/or properly recognize that Brian Baney suffered from two (2) esophageal perforations;

        b.      failing to timely and/or properly recognize that Brian Baney's esophageal perforation(s) was/were not repaired completely and/or appropriately and/or were leaking and to treat the leak(s);

        c.      failing to timely consult with a cardiothoracic surgeon regarding the esophageal perforations;

d.      failing to immediately transfer Brian Baney to a healthcare facility with properly-qualified cardio-thoracic surgeons on staff;

e.      failing to timely diagnosis and/or treat and/or prevent mediastinitis and/or infection;

f.      failing appreciate the severity of Brian Baney's post-operative condition in a timely manner;

g.      allowing an esophageal leak to continue to exist without properly treating the same;

h.      failing to consult with appropriately-qualified physician specialists regarding Brian Baney's esophageal perforation(s);

i.      failing to consult with appropriately-qualified physician specialists regarding Brian Baney's post-operative care at Mount Nittany Medical Center;

j.      failing to recognize the severity of the findings of radiologic studies in Brian Baney's post-operative care;

k.      failing to recognize/diagnose that only one esophageal perforation had been repaired;

l.      failing to appreciate and/or protect against Brian Baney's increased risk for perforation during the 7/19/12 surgical procedure;

m.     failing to consult with anesthesia to ascertain the manner in

which the esophageal perforation(s) occurred;

o.     failing to ensure proper monitoring of Brian Baney during his

post-operative care;

85.     The carelessness and negligence of Dr. Van Kirk, as set forth above,

increased the risk of harm and/or was a substantial factor and/or factual cause in

causing the injuries and damages suffered by Plaintiff Brian Baney as set forth

more fully *supra* in paragraph 73.

WHEREFORE, Plaintiffs, Brian Baney and Vicky Baney demand judgment

in their favor and against defendants James R. Fick, M.D.; James E. Frieje, M.D.;

John R. Van Kirk, M.D.; Mount Nittany Medical Center Health Services, Inc.,

d/b/a Mount Nittany Physician Group; Centre Community Health Services, Inc.,

d/b/a Mount Nittany Physician Group; Mount Nittany Medical Center; Mount

Nittany Surgical Center; The Milton S. Hershey Medical Center, d/b/a Penn State

Hershey Medical Group; Penn State Hershey Health System, Inc.; Penn State

Hershey Bone

and Joint Institute; and/or Penn State Hershey Neuroscience Institute in an amount

in excess of $75,000, plus interest, costs, and delay damages.

## COUNT IV – CORPORATE NEGLIGENCE
## BRIAN BANEY V. MOUNT NITTANY MEDICAL CENTER

87.     The above and foregoing paragraphs are incorporated by reference

hereat as if set forth at length in their entirety.

88.    The corporate negligence of defendant Mount Nittany Medical Center
consisted of the following:

   a.  A duty to use reasonable care in the maintenance of safe and

      adequate medical and surgical facilities and equipment for the

      treatment of Plaintiff Brian Baney, including for esophageal

      repair, post-surgical care and evaluation;

   b.  A duty to select and retain only competent physicians,

      surgeons, residents, nurses, technicians and others who treated

      Plaintiff Brian Baney, as described herein, including staff

      and/or employees;

   c.  A duty to oversee all persons who practice medicine within its

      walls as to patient care, in particular, the duty to oversee the

      physicians, surgeons, nurses, technicians and others who treated

      Plaintiff Brian Baney as described herein, including staff and/or

      employees, that will ensure proper neurosurgical procedures

      and

      surgical anesthesia management, and, post-surgical care and

      evaluation, and discharge of surgical patients;

   d.  A duty to formulate, adopt and enforce adequate rules and

      policies to ensure quality care for patient; in particular, the duty

      to have rules and policies to:

i.    ensure physicians, surgeons, resident, interns, nurses
      and/or other medical staff perform and/or document
      timely and proper patient assessments and/or evaluations;

ii.   ensure proper monitoring and/or evaluation of
      post-operative patients;

iii.  ensure proper monitoring of patients with post-operative
      pain and/or signs and symptoms of serious medical
      conditions such as mediastinitus;

iv.   ensure that patient complaints are timely and a
      appropriately assessed and responded to;

v.    ensure that changes in a patient's condition are timely
      communicated to physicians, nurses, techs, aides, and/or
      other personnel responsible for patient medical care
      and/or treatment;

vi.   ensure policies and/or procedures and their enforcement
      concerning the treatment of post-operative patients prior
      to discharge;

vii.  ensure proper and timely communication/consultation of
      physicians, specifically including ensuring the proper
      specialists are consulting;

viii. ensure proper training and supervision of the surgical
      staff and surgical nurses;

ix.    ensure timely ordering and completion of bloodwork and/or radiology studies;

x.    ensure timely consultations;

xi.    ensuring that cardiothoracic surgeons are available and on staff to treat patients who suffer from complications that arise from complex surgical procedures that are permitted to be performed at Mount Nittany Medical Center where it is reasonably foreseeable that such surgical specialists will be needed to care properly for patients; and,

xii.    ensuring that non-physicians are not permitted to perform anesthesia procedures such as placing an NG tube in surgical patients who are at high-risk for esophageal perforations;

89.    The carelessness and negligence of Mount Nittany Medical Center, as set forth above, increased the risk of harm and was a substantial factor and/or factual cause in causing the injuries and damages suffered by Plaintiff Brian Baney as set forth more fully *supra* in paragraph 73.

90.    Defendant Mount Nittany Medical Center had actual or constructive knowledge of its failures as described above.

WHEREFORE, Plaintiffs, Brian Baney and Vicky Baney demand judgment in their favor and against defendants James R. Fick, M.D.; James E. Frieje, M.D.;

John R. Van Kirk, M.D.;   David C. Sterner, MD; Cara M. Albarano, CRNA; John

Does 1-10; Jane Does 1-10; ABC Corporations 1-10; Mount Nittany Medical

Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre

Community Health Services, Inc., d/b/a Mount Nittany Physician Group; Mount

Nittany Medical Center; Mount Nittany Surgical Center; The Milton S. Hershey

Medical Center, d/b/a Penn State Hershey Medical Group; Penn State Hershey

Health System, Inc.; Penn State Hershey Bone and Joint Institute; and/or Penn

State Hershey Neuroscience Institute in an amount in excess of $75,000, plus

interest, costs, and delay damages.

## COUNT V - CORPORATE NEGLIGENCE
## BRIAN BANEY V. PENN STATE HERSHEY HEALTH SYSTEM

91.    The above and foregoing paragraphs are incorporated by reference

hereat as if set forth at length in their entirety.

92.    The corporate negligence of defendant Penn State Hershey Health

System consisted of the following:

      a.      A duty to use reasonable care in the maintenance of safe and

adequate medical and surgical facilities and equipment for the

treatment of Plaintiff Brian Baney, including for esophageal

repair, post-surgical care and evaluation;

      b.      A duty to select and retain only competent physicians,

surgeons, residents, nurses, technicians and others who treated

Plaintiff Brian Baney, as described herein, including staff and/or employees;

c.   A duty to oversee all persons who practice medicine within its walls as to patient care, in particular, the duty to oversee the physicians, surgeons, nurses, technicians and others who treated Plaintiff Brian Baney as described herein, including staff and/or employees, that will ensure proper neurosurgical procedures and surgical anesthesia management, and,    post-surgical care and evaluation, and discharge of surgical patients;

d.   A duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patient; in particular, the duty to have rules and policies to:

   i.   ensure physicians, surgeons, resident, interns, nurses and/or other medical staff perform and/or document timely and proper patient assessments and/or evaluations;

   ii.   ensure proper monitoring and/or evaluation of post-operative patients;

   iii.   ensure proper monitoring of patients with post-operative pain and/or signs and symptoms of serious medical conditions such as mediastinitus;

iv.    ensure that patient complaints are timely and appropriately assessed and responded to;

v.     ensure that changes in a patient's condition are timely communicated to physicians, nurses, techs, aides, and/or other personnel responsible for patient medical care and/or treatment;

vi.    ensure policies and/or procedures and their enforcement concerning the treatment of post-operative patients prior to discharge;

vii.   ensure proper and timely communication/consultation of physicians, specifically including ensuring the proper specialists are consulting;

viii.  ensure proper training and supervision of the surgical staff and surgical nurses;

ix.    ensure timely ordering and completion of bloodwork and/or radiology studies;

x.     ensure timely consultations;

xi.    ensuring that cardiothoracic surgeons are available and on staff to treat patients who suffer from complications that arise from complex surgical procedures that are permitted to be performed at

Mount Nittany Medical Center and/or other

surgical centers where such surgeries are

performed where it is reasonably foreseeable that

such surgical specialists will be needed to care

properly for

patients; and,

xii.   ensuring that non-physicians are not permitted to

perform anesthesia procedures such as placing an

NG tube in surgical patients who are at high-risk

for esophageal perforations;

93.   The carelessness and negligence of Mount Nittany Medical Center, as set forth above, increased the risk of harm and was a substantial factor and/or factual cause in causing the injuries and damages suffered by Plaintiff Brian Baney as set forth more fully *supra* in paragraph 73.

94.   Defendant Penn State Hershey Health System had actual or constructive knowledge of its failures as described above.

WHEREFORE, Plaintiffs, Brian Baney and Vicky Baney demand judgment in their favor and against defendants James R. Fick, M.D.; James E. Frieje, M.D.; John R. Van Kirk, M.D.;   David C. Sterner, MD; Cara M. Albarano, CRNA; John Does 1-10; Jane Does 1-10; ABC Corporations 1-10; Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre Community Health Services, Inc., d/b/a Mount Nittany Physician Group; Mount

Nittany Medical Center; Mount Nittany Surgical Center; The Milton S. Hershey Medical Center, d/b/a Penn State Hershey Medical Group; Penn State Hershey Health System, Inc.; Penn State Hershey Bone and Joint Institute; and/or Penn State Hershey Neuroscience Institute in an amount in excess of $75,000, plus interest, costs, and delay damages.

## COUNT VI – VICARIOUS LIABILITY
## BRIAN BANEY V. MOUNT NITTANY MEDICAL CENTER HEALTH SERVICES, INC., d/b/a MOUNT NITTANY PHYSICIAN GROUP

95.    The above and foregoing paragraphs are incorporated by reference hereat as if set forth at length in their entirety.

96.    Defendant Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group is vicariously liable *via* the doctrine of *respondeat superior* for all of the negligent acts and/or omissions of all individual defendants and/or agents and/or employees as detailed herein, specifically including Dr. Fick, Dr. Freije, Dr. Van Kirk, and/or others physicians, nurses, residents, technicians, technologists, assistants and/or agents or employees who (i) provided medical care to Brian Baney (2) during his 7/19/12 surgery and post-surgical period at (3) Mount Nittany Medical Center.

WHEREFORE, Plaintiffs, Brian Baney and Vicky Baney demand judgment in their favor and against defendants James R. Fick, M.D.; James E. Frieje, M.D.; John R. Van Kirk, M.D.;   David C. Sterner, MD; Cara M. Albarano, CRNA; John Does 1-10; Jane Does 1-10; ABC Corporations 1-10; Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre

Community Health Services, Inc., d/b/a Mount Nittany Physician Group; Mount

Nittany Medical Center; Mount Nittany Surgical Center; The Milton S. Hershey

Medical Center, d/b/a Penn State Hershey Medical Group; Penn State Hershey

Health System, Inc.; Penn State Hershey Bone and Joint Institute; and/or Penn

State Hershey Neuroscience Institute in an amount in excess of $75,000, plus

interest, costs, and delay damages.

**COUNT VII – VICARIOUS LIABILITY**
**BRIAN BANEY V. CENTRE COMMUNITY HEALTH SERVICES, INC.,**
**d/b/a MOUNT NITTANY PHYSICIAN GROUP**

97.    The above and foregoing paragraphs are incorporated by reference

hereat as if set forth at length in their entirety.

98.    Defendant Centre Community Health Services, Inc., d/b/a Mount

Nittany Physician Group is vicariously liable *via* the doctrine of *respondeat*

*superior* for all of the negligent acts and/or omissions of all individual defendants

and/or agents and/or employees as detailed herein, specifically including Dr. Fick,

Dr. Freije, Dr. Van Kirk, and/or others physicians, nurses, residents, technicians,

technologists, assistants and/or agents or employees who (i) provided medical care

to Brian Baney (2) during his 7/19/12 surgery and post-surgical period at (3)

Mount Nittany Medical Center.

WHEREFORE, Plaintiffs, Brian Baney and Vicky Baney demand judgment

in their favor and against defendants James R. Fick, M.D.; James E. Frieje, M.D.;

John R. Van Kirk, M.D.;   David C. Sterner, MD; Cara M. Albarano, CRNA; John

Does 1-10; Jane Does 1-10; ABC Corporations 1-10; Mount Nittany Medical

Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre

Community Health Services, Inc., d/b/a Mount Nittany Physician Group; Mount

Nittany Medical Center; Mount Nittany Surgical Center; The Milton S. Hershey

Medical Center, d/b/a Penn State Hershey Medical Group; Penn State Hershey

Health System, Inc.; Penn State Hershey Bone and Joint Institute; and/or Penn

State Hershey Neuroscience Institute in an amount in excess of $75,000, plus

interest, costs, and delay damages.

## COUNT VIII – VICARIOUS LIABILITY
## BRIAN BANEY V. MOUNT NITTANY MEDICAL CENTER

99.   The above and foregoing paragraphs are incorporated by reference

hereat as if set forth at length in their entirety.

100.   Defendant Mount Nittany Medical Center is vicariously liable *via* the

doctrine of *respondeat superio*r for all of the negligent acts and/or omissions of all

individual defendants and/or agents and/or employees as detailed herein,

specifically including Dr. Fick, Dr. Freije, Dr. Van Kirk, and/or others physicians,

nurses, residents, technicians, technologists, assistants and/or agents or employees

who (i) provided medical care to Brian Baney (2) during his 7/19/12 surgery and

post-surgical period at (3) Mount Nittany Medical Center.

WHEREFORE, Plaintiffs, Brian Baney and Vicky Baney demand judgment

in their favor and against defendants James R. Fick, M.D.; James E. Frieje, M.D.;

John R. Van Kirk, M.D.;   David C. Sterner, MD; Cara M. Albarano, CRNA; John

Does 1-10; Jane Does 1-10; ABC Corporations 1-10; Mount Nittany Medical

Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre

Community Health Services, Inc., d/b/a Mount Nittany Physician Group; Mount

Nittany Medical Center; Mount Nittany Surgical Center; The Milton S. Hershey

Medical Center, d/b/a Penn State Hershey Medical Group; Penn State Hershey

Health System, Inc.; Penn State Hershey Bone and Joint Institute; and/or Penn

State Hershey Neuroscience Institute in an amount in excess of $75,000, plus

interest, costs, and delay damages.

## COUNT IX – VICARIOUS LIABILITY
## BRIAN BANEY V. MOUNT NITTANY SURGICAL CENTER

101.   The above and foregoing paragraphs are incorporated by reference

hereat as if set forth at length in their entirety.

102.   Defendant Mount Nittany Surgical Center is vicariously liable *via* the

doctrine of *respondeat superior* for all of the negligent acts and/or omissions of all

individual defendants and/or agents and/or employees as detailed herein,

specifically including Dr. Fick, Dr. Freije, Dr. Van Kirk, and/or others physicians,

nurses, residents, technicians, technologists, assistants and/or agents or employees

who (i) provided medical care to Brian Baney (2) during his 7/19/12 surgery and

post-surgical period at (3) Mount Nittany Medical Center.

WHEREFORE, Plaintiffs, Brian Baney and Vicky Baney demand judgment

in their favor and against defendants James R. Fick, M.D.; James E. Frieje, M.D.;

John R. Van Kirk, M.D.;   David C. Sterner, MD; Cara M. Albarano, CRNA; John

Does 1-10; Jane Does 1-10; ABC Corporations 1-10; Mount Nittany Medical

Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre

Community Health Services, Inc., d/b/a Mount Nittany Physician Group; Mount

Nittany Medical Center; Mount Nittany Surgical Center; The Milton S. Hershey

Medical Center, d/b/a Penn State Hershey Medical Group; Penn State Hershey

Health System, Inc.; Penn State Hershey Bone and Joint Institute; and/or Penn

State Hershey Neuroscience Institute in an amount in excess of $75,000, plus

interest, costs, and delay damages.

**COUNT X – VICARIOUS LIABILITY**
**BRIAN BANEY V. THE MILTON S. HERSHEY MEDICAL CENTER, d/b/a**
**PENN STATE HERSHEY MEDICAL GROUP**

103.   The above and foregoing paragraphs are incorporated by reference

hereat as if set forth at length in their entirety.

104.   Defendant The Milton S. Hershey Medical Center, d/b/a Penn State

Hershey Medical Group is vicariously liable *via* the doctrine of *respondeat*

*superio*r for all of the negligent acts and/or omissions of all individual defendants

and/or agents and/or employees as detailed herein, specifically including Dr. Fick,

Dr. Freije, Dr. Van Kirk, and/or others physicians, nurses, residents, technicians,

technologists, assistants and/or agents or employees who (i) provided medical care

to Brian Baney (2) during his 7/19/12 surgery and post-surgical period at (3)

Mount Nittany Medical Center.

WHEREFORE, Plaintiffs, Brian Baney and Vicky Baney demand judgment

in their favor and against defendants James R. Fick, M.D.; James E. Frieje, M.D.;

John R. Van Kirk, M.D.;   David C. Sterner, MD; Cara M. Albarano, CRNA; John

Does 1-10; Jane Does 1-10; ABC Corporations 1-10; Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre Community Health Services, Inc., d/b/a Mount Nittany Physician Group; Mount Nittany Medical Center; Mount Nittany Surgical Center; The Milton S. Hershey Medical Center, d/b/a Penn State Hershey Medical Group; Penn State Hershey Health System, Inc.; Penn State Hershey Bone and Joint Institute; and/or Penn State Hershey Neuroscience Institute in an amount in excess of $75,000, plus interest, costs, and delay damages.

## COUNT XI – VICARIOUS LIABILITY
## BRIAN BANEY V. PENN STATE HERSHEY HEALTH SYSTEM, INC.

105.   The above and foregoing paragraphs are incorporated by reference hereat as if set forth at length in their entirety.

106.   Defendant Penn State Hershey Health System, Inc. is vicariously liable *via* the doctrine of *respondeat superior* for all of the negligent acts and/or omissions of all individual defendants and/or agents and/or employees as detailed herein, specifically including Dr. Fick, Dr. Freije, Dr. Van Kirk, and/or others physicians, nurses, residents, technicians, technologists, assistants and/or agents or employees who (i) provided medical care to Brian Baney (2) during his 7/19/12 surgery and post-surgical period at (3) Mount Nittany Medical Center.

WHEREFORE, Plaintiffs, Brian Baney and Vicky Baney demand judgment in their favor and against defendants James R. Fick, M.D.; James E. Frieje, M.D.; John R. Van Kirk, M.D.; Mount Nittany Medical Center Health Services, Inc.,

d/b/a Mount Nittany Physician Group; Centre Community Health Services, Inc.,

d/b/a Mount Nittany Physician Group; Mount Nittany Medical Center; Mount

Nittany Surgical Center; The Milton S. Hershey Medical Center, d/b/a Penn State

Hershey Medical Group; Penn State Hershey Health System, Inc.; Penn State

Hershey Bone and Joint Institute; and/or Penn State Hershey Neuroscience

Institute in an amount in excess of $75,000, plus interest, costs, and delay

damages.

## COUNT XII – VICARIOUS LIABILITY
## BRIAN BANEY V. PENN STATE HERSHEY BONE AND JOINT INSTITUTE

107.   The above and foregoing paragraphs are incorporated by reference

hereat as if set forth at length in their entirety.

108.   Defendant Penn State Hershey Bone and Joint Institute is vicariously

liable *via* the doctrine of *respondeat superior* for all of the negligent acts and/or

omissions of all individual defendants and/or agents and/or employees as detailed

herein, specifically including Dr. Fick, Dr. Freije, Dr. Van Kirk, and/or others

physicians, nurses, residents, technicians, technologists, assistants and/or agents or

employees who (i) provided medical care to Brian Baney (2) during his 7/19/12

surgery and post-surgical period at (3) Mount Nittany Medical Center.

WHEREFORE, Plaintiffs, Brian Baney and Vicky Baney demand judgment

in their favor and against defendants James R. Fick, M.D.; James E. Frieje, M.D.;

John R. Van Kirk, M.D.;   David C. Sterner, MD; Cara M. Albarano, CRNA; John

Does 1-10; Jane Does 1-10; ABC Corporations 1-10; Mount Nittany Medical

Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre

Community Health Services, Inc., d/b/a Mount Nittany Physician Group; Mount

Nittany Medical Center; Mount Nittany Surgical Center; The Milton S. Hershey

Medical Center, d/b/a Penn State Hershey Medical Group; Penn State Hershey

Health System, Inc.; Penn State Hershey Bone and Joint Institute; and/or Penn

State Hershey Neuroscience Institute in an amount in excess of $75,000, plus

interest, costs, and delay damages.

## COUNT XIII – VICARIOUS LIABILITY
## BRIAN BANEY V. PENN STATE HERHEY NEUROSCIENCE INSTITUTE

109.   The above and foregoing paragraphs are incorporated by reference

hereat as if set forth at length in their entirety.

110.   Defendant Penn State Hershey Neuroscience Institute is vicariously

liable *via* the doctrine of *respondeat superior* for all of the negligent acts and/or

omissions of all individual defendants and/or agents and/or employees as detailed

herein, specifically including Dr. Fick, Dr. Freije, Dr. Van Kirk, and/or others

physicians, nurses, residents, technicians, technologists, assistants and/or agents or

employees who (i) provided medical care to Brian Baney (2) during his 7/19/12

surgery and post-surgical period at (3) Mount Nittany Medical Center.

WHEREFORE, Plaintiffs, Brian Baney and Vicky Baney demand judgment

in their favor and against defendants James R. Fick, M.D.; James E. Frieje, M.D.;

John R. Van Kirk, M.D.;   David C. Sterner, MD; Cara M. Albarano, CRNA; John

Does 1-10; Jane Does 1-10; ABC Corporations 1-10; Mount Nittany Medical

Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre

Community Health Services, Inc., d/b/a Mount Nittany Physician Group; Mount

Nittany Medical Center; Mount Nittany Surgical Center; The Milton S. Hershey

Medical Center, d/b/a Penn State Hershey Medical Group; Penn State Hershey

Health System, Inc.; Penn State Hershey Bone and Joint Institute; and/or Penn

State Hershey Neuroscience Institute in an amount in excess of $75,000, plus

interest, costs, and delay damages.

**COUNT XIV – CONSORTIUM**
**VICKY BANEY V. JAMES R. FICK, M.D.; JAMES E. FREIJE, M.D.;**
**JOHN R. VAN KIRK, M.D.; DAVID C. STERNER, M.D.; CARA M.**
**ALBARANO, CRNA; JOHN DOES 1-10; JANE DOES 1-10; ABC**
**CORPORATIONS 1-10; MOUNT NITTANY MEDICAL CENTER**
**HEALTH SERVICES, INC., d/b/a MOUNT NITTANY PHYSICIAN**
**GROUP; MOUNT NITTANY MEDICAL CENTER; MOUNT NITTANY**
**SURGICAL CENTER; THE MILTON S. HERSHEY MEDICAL CENTER,**
**d/b/a PENN STATE HERSHEY MEDICAL GROUP; PENN STATE**
**HERSHEY HEALTH SYSTEM, INC.; PENN STATE HERSHEY BONE**
**AND JOINT INSTITUTE; AND/OR PENN STATE HERSHEY**
**NEUROSCIENCE INSTITUTE**

111.   The above and foregoing paragraphs are incorporated by reference

hereat as if set forth at length in their entirety.

112.   As a result of the negligence and carelessness of the defendants

herein, Plaintiff Vicky Baneyt has suffered, and will continue to suffer, the loss of

the services, support and consortium of her spouse, plaintiff Brian Baney.

WHEREFORE, Plaintiffs, Brian Baney and Vicky Baney demand judgment

in their favor and against defendants James R. Fick, M.D.; James E. Frieje, M.D.;

John R. Van Kirk, M.D.;   David C. Sterner, MD; Cara M. Albarano, CRNA; John

Does 1-10; Jane Does 1-10; ABC Corporations 1-10; Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre Community Health Services, Inc., d/b/a Mount Nittany Physician Group; Mount Nittany Medical Center; Mount Nittany Surgical Center; The Milton S. Hershey Medical Center, d/b/a Penn State Hershey Medical Group; Penn State Hershey Health System, Inc.; Penn State Hershey Bone and Joint Institute; and/or Penn State Hershey Neuroscience Institute in an amount in excess of $75,000, plus interest, costs, and delay damages.

## COUNT XV – VIOLATION OF EMERGENCY MEDICAL TREATMENT AND ACTIVE LABOR ACT, 42 U.S.C. §1395dd ("EMTALA") BRIAN BANEY AND VICKY BANEY V. MOUNT NITTANY MEDICAL CENTER

113.   The above and foregoing paragraphs are incorporated by reference hereat as if set forth at length in their entirety.

114.   The "Medical Screening" requirement of EMTALA applies if any individual *"comes to the emergency department"*, but the "Necessary Stabilizing Treatment for Emergency Medical Conditions" requirement applies if any individual *"comes to a hospital"* and the hospital determines that the individual has an emergency medical condition. [42 USC 1395dd(a) and 42 USC 1395dd(b), (emphasis added).]

115.   It was determined as of 7/19/2012 that Brian Baney was suffering from an "emergency medical condition" as evidenced by his subsequent, care

treatment, records, and diagnostic test results, his remaining in the intensive care unit, and his transfer to a specialized tertiary care facility.

116.   It was again determined and/or reinforced on 7/23/2012 ,when it was confirmed by barium swallow study that contents were leaking from a tear in Brian Baney's esophagus into his mediastinum, that he was suffering from an "emergency medical condition" as evidenced by his subsequent, care treatment, records, and diagnostic test results, his remaining in the intensive care unit, and his transfer to a specialized tertiary care facility.

117.   On 7/19/2012 and 7/23/2012, during which times Brian Baney was an admitted patient at Mount Nittany Medical Center and was suffering from an emergency medical condition, to wit, an esophageal laceration causing various contents to leak into his mediastinum, that put his life and health in jeopardy, placed him at risk for a serious impairment of a body function, placed him at risk for the serious dysfunction of a body organ.

118.   The defendant physicians and/or the employees, agents, staff, nurses, or other medical providers who cared for Brian Baney during his admission at Mount Nittany Medical Center, specifically on 7/19/2012 and 7/22/2012 failed to stabilize Brian Baney and/or to transfer him to another hospital for further appropriate treatment which conduct, actions and/or omissions violated EMTALA.

119.   As a result of the foregoing violations of EMTALA by Mount Nittany Medical Center, and/or its employees, servants, workmen, agents and/or ostensible agents, Plaintiffs the losses and damages set forth above in detail.

WHEREFORE, Plaintiffs, Brian Baney and Vicky Baney demand judgment in their favor and against defendants James R. Fick, M.D.; James E. Frieje, M.D.; John R. Van Kirk, M.D.;   David C. Sterner, MD; Cara M. Albarano, CRNA; John Does 1-10; Jane Does 1-10; ABC Corporations 1-10; Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre Community Health Services, Inc., d/b/a Mount Nittany Physician Group; Mount Nittany Medical Center; Mount Nittany Surgical Center; The Milton S. Hershey Medical Center, d/b/a Penn State Hershey Medical Group; Penn State Hershey Health System, Inc.; Penn State Hershey Bone and Joint Institute; and/or Penn State Hershey Neuroscience Institute in an amount in excess of $75,000, plus interest, costs, and delay damages.

## COUNT XVI – PROFESSIONAL NEGLIGENCE
## BRIAN BANEY V. DAVID C. STERNER, M.D.

120.    The above and foregoing paragraphs are incorporated by reference hereat as if set forth at length in their entirety.

121.    Defendant Dr. Sterner has, at all times material and relevant hereto, held himself out to the public, and to Plaintiffs in particular, as a healthcare provider who possesses special skill and knowledge in the area of anesthesia.

122.    Dr. Sterner, as an agent, ostensible agent, employee, servant, and/or workman of all of the defendants herein, specifically including Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre Community Health Services, Inc., d/b/a Mount Nittany Physician Group;

and/or Mount Nittany Medical Center, failed to provide reasonable healthcare under the circumstances and his acts and/or omissions fell below the applicable standard of care required of him and his negligence and carelessness consisted of the following:

a.  perforating Brian Baney's esophagus during the 7/19/12 ` surgery;

b.  failing to timely recognize that Brian Baney's esophagus had been perforated;

c.  permitting an non-physician CRNA to place an NG tube and/or not adequately supervising this person;

d.  using an 18 French NG tube;

e.  permitting a non-physician CRNA to place a size 18 French NG tube;

f.  failing to lubricate the NG tube prior to placing it to reduce the risk of esophageal injury;

g.  failing to instruct CRNA Albarano to lubricate the NG tube prior to placing it to reduce the risk of esophageal injury;

h.  using excessive force in passing the NG tube into Brian Baney;

i.  failing to timely consult with a cardiothoracic surgeon regarding the esophageal perforation(s);

j.    failing to immediately transfer Brian Baney to a healthcare facility with properly-qualified cardio-thoracic surgeons on staff;

k.    failing to consult with appropriately-qualified physician specialists regarding Brian Baney's esophageal perforation(s);

l.    permitting an otorhinolaryngologist to attempt a repair of an esophageal perforation;

m.    failing to timely recognize/diagnose that only one of two esophageal perforation had been repaired;

n.    failing to appreciate Brian Baney's increased risk for perforation during the 7/19/12 surgical procedure and/or protect against it;

o.    failing to properly inspect the entire esophagus prior to closure to ensure there were not additional injuries;

p.    failing to properly perform an intra-operative testing to ensure that Brian Baney's esophagus was properly repaired prior to closure;

q.    failing to properly perform intra-operative testing to ensure that Brian Baney's esophagus was not leaking prior to closure;

t.    instructing and/or permitting a non-physician to place an NG tube in a patient at high risk for esophageal injury.

123.   The carelessness and negligence of Dr. Stermer, as set forth above, increased the risk of harm and/or was a substantial factor and/or factual cause in causing the injuries and damages suffered by Plaintiff Brian Baney as set forth more fully *supra* in paragraph 73.

WHEREFORE, Plaintiffs, Brian Baney and Vicky Baney demand judgment in their favor and against defendants James R. Fick, M.D.; James E. Frieje, M.D.; John R. Van Kirk, M.D.;   David C. Sterner, MD; Cara M. Albarano, CRNA; John Does 1-10; Jane Does 1-10; ABC Corporations 1-10; Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre Community Health Services, Inc., d/b/a Mount Nittany Physician Group; Mount Nittany Medical Center; Mount Nittany Surgical Center; The Milton S. Hershey Medical Center, d/b/a Penn State Hershey Medical Group; Penn State Hershey Health System, Inc.; Penn State Hershey Bone and Joint Institute; and/or Penn State Hershey Neuroscience Institute in an amount in excess of $75,000, plus interest, costs, and delay damages.

## COUNT XVII – PROFESSIONAL NEGLIGENCE
## BRIAN BANEY V. CARA M. ALBARANO, CRNA

124.   The above and foregoing paragraphs are incorporated by reference hereat as if set forth at length in their entirety.

125.   Defendant CRNA Albarano has, at all times material and relevant hereto, held herself out to the public, and to Plaintiffs in particular, as a healthcare provider who possesses special skill and knowledge in the area of anesthesia.

126.   CRNA Albarano, as an agent, ostensible agent, employee, servant, and/or workman of all of the defendants herein, specifically including Dr. Sterner, Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre Community Health Services, Inc., d/b/a Mount Nittany Physician Group; and/or Mount Nittany Medical Center, failed to provide reasonable healthcare under the circumstances and her acts and/or omissions fell below the applicable standard of care required of her and her negligence and carelessness consisted of the following:

a.   perforating Brian Baney's esophagus during the 7/19/12 surgery;

b.   failing to timely recognize that Brian Baney's esophagus had been perforated;

c.   placing an NG tube in a high risk patient without appropriate physician supervision;

d.   placing an NG tube in a high risk patient;

e.   using an 18 French NG tube;

f.   placing an 18 French NG tube without appropriate physician supervision;

g.   failing to lubricate the NG tube prior to placing it to reduce the risk of esophageal injury;

h.   using excessive force in passing the NG tube into Brian Baney;

i. failing to consult with a cardiothoracic surgeon regarding the esophageal perforation(s);

j. failing to immediately transfer Brian Baney to a healthcare facility with properly-qualified cardio-thoracic surgeons on staff;

k. failing to consult with appropriately-qualified physician specialists regarding Brian Baney's esophageal perforation(s);

l. failing to recognize that only one of two esophageal perforation had been repaired;

m. failing to appreciate Brian Baney's increased risk for perforation during the 7/19/12 surgical procedure and to protect against it;

n. failing to properly inspect the entire esophagus prior to closure to ensure there were not additional injuries;

o. failing to perform proper intra-operative testing to ensure that Brian Baney's esophagus was properly repaired prior to closure;

p. failing to perform proper intra-operative testing to ensure that Brian Baney's esophagus was not leaking prior to closure;

q. placing an NG tube in a patient at high risk for esophageal injury.

127. The carelessness and negligence of CRNA Albarano, as set forth above, increased the risk of harm and/or was a substantial factor and/or factual cause in causing the injuries and damages suffered by Plaintiff Brian Baney as set forth more fully *supra* in paragraph 73.

WHEREFORE, Plaintiffs, Brian Baney and Vicky Baney demand judgment in their favor and against defendants James R. Fick, M.D.; James E. Frieje, M.D.; John R. Van Kirk, M.D.;   David C. Sterner, MD; Cara M. Albarano, CRNA; John Does 1-10; Jane Does 1-10; ABC Corporations 1-10; Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre Community Health Services, Inc., d/b/a Mount Nittany Physician Group; Mount Nittany Medical Center; Mount Nittany Surgical Center; The Milton S. Hershey Medical Center, d/b/a Penn State Hershey Medical Group; Penn State Hershey Health System, Inc.; Penn State Hershey Bone and Joint Institute; and/or Penn State Hershey Neuroscience Institute in an amount in excess of $75,000, plus interest, costs, and delay damages.

**COUNT XVIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS VICKY BANEY V. JAMES R. FICK, M.D.; JAMES E. FREIJE, M.D.; JOHN R. VAN KIRK, M.D.; DAVID C. STERNER, M.D.; CARA M. ALBARANO, CRNA; JOHN DOES 1-10; JANE DOES 1-10; ABC CORPORATIONS 1-10; MOUNT NITTANY MEDICAL CENTER HEALTH SERVICES, INC., d/b/a MOUNT NITTANY PHYSICIAN GROUP; MOUNT NITTANY MEDICAL CENTER; MOUNT NITTANY SURGICAL CENTER; THE MILTON S. HERSHEY MEDICAL CENTER, d/b/a PENN STATE HERSHEY MEDICAL GROUP; PENN STATE HERSHEY HEALTH SYSTEM, INC.; PENN STATE HERSHEY BONE AND JOINT INSTITUTE; AND/OR PENN STATE HERSHEY NEUROSCIENCE INSTITUTE**

128.   The above and foregoing paragraphs are incorporated by reference hereat as if set forth at length in their entirety.

129.   Plaintiff Vicky Baney, the wife of Brian Baney, directly witnessed the above-described negligence, specifically including his pain and suffering.

130.   Plaintiff Vicky Baney, the wife of Brian Baney, directly witnessed the Defendants' failures to properly treat her husband, his clinical deterioration, and other complications described herein.

131.   The witnessing of the above-described negligence and injury caused to her husband has caused Plaintiff Vicky Baney to suffer severe and long-term emotional shock and trauma and psychological injury.

132.   As a result of the emotional shock and trauma suffered by Plaintiff Vicky Baney as a result of all Defendants' negligence, Plaintiff Vicky Baney continues to experience physical and/or emotional effects of that emotional trauma and shock and will continue to so suffer in the future, and is, therefore, entitled to recover damages in her own right for her physical injury and emotional pain and suffering under the law as stated in <u>Sinn v. Burd</u>, 404 A.2d 672 (1979), and its progeny.

Respectfully submitted,

By: _____

H. Leon Aussprung, M.D., Esquire
James E. Hockenberry, Esquire
*Counsel for Plaintiffs*