**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIAN** and **VICKY BANEY,** | : | |
| Plaintiffs | : | CIVIL ACTION NO. 4:14-CV-2393 (JUDGE MANNION) |
| v. | : | |
| **JAMES R. FICK, M.D.,** *et al.,* | : | |
| Defendants | : | |

## MEMORANDUM

Pending before the court are the defendants' motions to dismiss the sole federal count of the plaintiffs' complaint, (Doc. 62, Doc. 64, Doc. 67, Doc. 75), on the grounds that plaintiffs failed to plausibly plead sufficient factual matter to state a claim upon which relief can be granted. Based upon the court's review of the relevant documents, the court will **GRANT** the defendants' motions and **DISMISS**, with prejudice, plaintiffs' federal claim. It will also decline to exercise supplemental jurisdiction over the remainder of the complaint, dismissing it, without prejudice, to re-filing in the appropriate Pennsylvania State Court.

**I.    PROCEDURAL BACKGROUND**

By way of relevant background, the plaintiffs, Brian and Vicky Baney, husband and wife, filed the instant action, (Doc. 1), on July 9, 2014, in the U.S. District Court for the Eastern District of Pennsylvania under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §1395dd, *et seq*., as well as Pennsylvania state law, including, professional

1

medical malpractice claims. It is alleged that this court has subject matter jurisdiction over plaintiffs' federal claims based on 28 U.S.C. §1331, and that the court can exercise jurisdiction over plaintiffs' pendent state claims under 28 U.S.C. §1367. The defendants are: James R. Pick, M.D.; James E. Frieje, M.D.; John R. Van Kirk, M.D.; David C. Sterner, MD; Cara M. Albarano, CRNA; John Does 1-10; Jane Does 1-10; ABC Corporations 1-10; Mount Nittany Medical Center Health Services, Inc., d/b/a Mount Nittany Physician Group; Centre Community Health Services, Inc., d/b/a Mount Nittany Physician Group; Mount Nittany Medical Center; Mount Nittany Surgical Center; The Milton S. Hershey Medical Center, d/b/a Penn State Hershey Medical Group; Penn State Hershey Health System, Inc.; Penn State Hershey Bone and Joint Institute; and Penn State Hershey Neuroscience Institute. On November 14, 2014, plaintiffs' case was transferred to this court since venue was clearly lacking in the Eastern District. (Doc. 58).

Subsequently, defendants filed motions to dismiss plaintiffs' federal claim with prejudice pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 12(b)(1), and they seek the court to decline its exercise of supplemental jurisdiction over plaintiffs' remaining state law claims. (Doc. 62, 64, 67, 75). The defendants filed their briefs in support. (Docs. 63, 65, 68, 77). Plaintiffs filed their briefs in opposition, essentially relying on their prior opposition brief filed in the Eastern District which is attached to their present briefs. (Docs. 37, 71, 72, 76). On January 28, 2014, plaintiffs filed a motion to amend their complaint to add Geisinger Clinic as a party defendant with a proposed amended complaint attached asserting a new vicarious liability negligence claim against this additional defendant. (Doc. 74). On February 13, 2015, The defendants filed their brief in opposition. (Doc. 81). As such, defendants'

motions to dismiss are ripe for disposition.

## II.   FACTUAL BACKGROUND[1]

Plaintiffs allege that Brian Baney was injured as "a result of [inpatient] medical care provided to [him] from 7/19/2012 through 7/26/2012 at Mount Nittany Medical Center in State College, Centre County, Pennsylvania" ("Mount Nittany"). Plaintiffs aver that "[d]uring a[n] [elective cervical spine] neurosurgical procedure on 7/19/2012[,] Mr. Baney suffered serious and catastrophic injury to his esophagus [*i.e.*, a perforation] which was not properly managed/stabilized during his inpatient stay at Mount Nittany Medical Center resulting in devastating permanent injuries." (Doc. 63-1). Plaintiffs allege that after Mr. Baney's esophagus was perforated during the surgery, "the medical team managing his care was negligent in treating him for his esophageal injury while at Mount Nittany, including that the defendants should have arranged for his transport immediately following the injury to a tertiary care facility where cardiothoracic surgeons were available." (Doc. 37, at 2-3). Thus, plaintiffs state that the "gist of the EMTALA claim is that Brain Baney was not 'stabilized' or transferred as required by EMTALA for persons suffering from an 'emergency condition.'" (Doc. 37, at 2-3). Plaintiffs indicate that Mr. Baney was not transported from Mount Nittany to Hershey Medical Center until July 26, 2012. Plaintiffs admit that all of the conduct alleged to have been in violation of the EMTALA occurred at Mount Nittany. (Doc. 74,

---

[1]The facts alleged in plaintiffs' complaint must be accepted as true in considering defendants' motions to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005). The court notes that it focuses its discussion of the facts to those pertaining to plaintiffs' federal claim under EMTALA.

at 4).

In Count XV of their original complaint, plaintiffs raise their only federal claim under the EMTALA against one defendant, Mount Nittany Medical Center, ¶'s 113-119. (Doc. 63-1). In their EMTALA claim, plaintiffs allege as follows:

> 113. The above and foregoing paragraphs are incorporated by reference hereat (sic) as if set forth at length in their entirety.
>
> 114. The "Medical Screening" requirement of EMTALA applies if any individual "comes to the emergency department", but the "Necessary Stabilizing Treatment for Emergency Medical Conditions" requirement applies if any individual "comes to a hospital" and the hospital determines that the individual has an emergency medical condition. [42 U.S.C. 1395dd(a) and 42 USC 1395dd(b)J.]
>
> 115. It was determined as of 7/19/2012 that Brian Baney was suffering from an "emergency medical condition" as evidenced by his subsequent, care treatment, records, and diagnostic test results, his remaining in the intensive care unit, and his transfer to a specialized tertiary care facility.
>
> 116. It was again determined and/or reinforced on 7/23/2012, when it was confirmed by barium swallow study that contents were leaking from a tear in Brian Baney's esophagus into his mediastinum, that he was suffering from an "emergency medical condition" as evidenced by his subsequent, care treatment records, and diagnostic test results, his remaining in the intensive care unit, and his transfer to a specialized tertiary care facility.
>
> 117. On 7/19/2012 and 7/23/2012, during which times Brian Baney was an admitted patient at Mount Nittany Medical Center and was suffering from an emergency medical condition, to wit, an esophageal laceration causing various contents to leak into his mediastinum, that put his life and health in jeopardy, placed him at risk for a serious impairment of a body function, placed him at risk for the serious dysfunction of a body organ.
>
> 118. The defendant physicians and/or the employees, agents, staff, nurses, or other medical providers who cared for Brian Baney during his admission at Mount Nittany Medical Center, specifically on 7/19/2012 and 7/22/2012 failed to stabilize Brian

at 4).

In Count XV of their original complaint, plaintiffs raise their only federal claim under the EMTALA against one defendant, Mount Nittany Medical Center, ¶'s 113-119. (Doc. 63-1). In their EMTALA claim, plaintiffs allege as follows:

> 113. The above and foregoing paragraphs are incorporated by reference hereat (sic) as if set forth at length in their entirety.
>
> 114. The "Medical Screening" requirement of EMTALA applies if any individual "comes to the emergency department", but the "Necessary Stabilizing Treatment for Emergency Medical Conditions" requirement applies if any individual "comes to a hospital" and the hospital determines that the individual has an emergency medical condition. [42 U.S.C. 1395dd(a) and 42 USC 1395dd(b)J.]
>
> 115. It was determined as of 7/19/2012 that Brian Baney was suffering from an "emergency medical condition" as evidenced by his subsequent, care treatment, records, and diagnostic test results, his remaining in the intensive care unit, and his transfer to a specialized tertiary care facility.
>
> 116. It was again determined and/or reinforced on 7/23/2012, when it was confirmed by barium swallow study that contents were leaking from a tear in Brian Baney's esophagus into his mediastinum, that he was suffering from an "emergency medical condition" as evidenced by his subsequent, care treatment records, and diagnostic test results, his remaining in the intensive care unit, and his transfer to a specialized tertiary care facility.
>
> 117. On 7/19/2012 and 7/23/2012, during which times Brian Baney was an admitted patient at Mount Nittany Medical Center and was suffering from an emergency medical condition, to wit, an esophageal laceration causing various contents to leak into his mediastinum, that put his life and health in jeopardy, placed him at risk for a serious impairment of a body function, placed him at risk for the serious dysfunction of a body organ.
>
> 118. The defendant physicians and/or the employees, agents, staff, nurses, or other medical providers who cared for Brian Baney during his admission at Mount Nittany Medical Center, specifically on 7/19/2012 and 7/22/2012 failed to stabilize Brian

Baney and/or to transfer him to another hospital for further appropriate treatment which conduct, actions and/or omissions violated EMTALA.

119. As a result of the foregoing violations of EMTALA by Mount Nittany Medical Center, and/or its employees, servants, workmen, agents and/or ostensible agents, Plaintiffs (sic) the losses and damages set forth above in detail.

## III. STANDARD OF REVIEW

The defendants' motions to dismiss are brought, in part, pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). Defendants argue that under Rule 12(b)(6), Count XV, raising a claim under EMTALA, should be dismissed for failure to state a cognizable claim. This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231

5

(3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See*, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). However, "[d]ismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

Defendants' motions also facially challenge this court's subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure based on federal question jurisdiction. The plaintiffs assert that there is federal question jurisdiction since they bring one claim under federal law, namely,

EMTALA. "Dismissal under a facial challenge is proper 'only when the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous.'" Byrne v. Cleveland Clinic, 684 F.Supp.2d 641, 648-49 (E.D.Pa. 2010) (citing Kehr Packages, Inc., 926 F.2d at 1408–09) (quoting Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). "In this circumstance, the court must accept all well-pleaded allegations in plaintiff's complaint as true, and must view them in the light most favorable to the non-movant." Id. at 649 (citing In re Kaiser Group Int'l Inc., 399 F.3d 558, 561 (3d Cir. 2005)). Additionally, "a party asserting that the court has jurisdiction always bears the burden of showing that the case is properly before the court." Id. (citing Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir.1993); McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). As such, "the Court must accept the allegations of the [] Complaint as true, and consider whether [plaintiffs' federal] claim[] "clearly appear[s] to be immaterial and made solely for the purpose of obtaining jurisdiction or where [the claim] is wholly insubstantial and frivolous." Byrne v. Cleveland Clinic, 684 F.Supp.2d at 650 (citing Bell, 327 U.S. at 682–83, 66 S.Ct. 773).

**IV.    DISCUSSION**

The EMTALA "forbids hospitals from refusing to treat individuals with emergency conditions, a practice often referred to as 'patient dumping.'" Torretti v. Main Line Hospitals, Inc., 580 F.3d 168, 169 (3d Cir. 2009). "EMTALA[] ... is not a federal malpractice statute." Id. at 170. Also, the EMTALA was not "intended to create a federal malpractice statute or cover cases of hospital negligence." Id. at 178.

7

In Torretti, 580 F.3d at 172-73, the Third Circuit explained the background of EMTALA as follows:

> EMTALA requires hospitals to give certain types of medical care to individuals presented for emergency treatment: (a) appropriate medical screening, (b) stabilization of known emergency medical conditions and labor, and (c) restrictions on transfer of unstabilized individuals to outside hospital facilities. 42 U.S.C. §1395dd(a)-(c) FN7; see Urban v. King, 43 F.3d 523, 525 (10th Cir.1994) (stating that a hospital has two primary obligations under EMTALA: (1) if an individual arrives at an emergency room, the hospital must provide appropriate medical screening to determine whether an emergency medical condition exists; and (2) if the hospital determines an individual has an emergency medical condition that has not been stabilized, it may not transfer the patient unless certain conditions are met).
>
>> FN7. The statute states in pertinent part:
>> (a) Medical screening requirement
>> In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.
>>
>> (b) Necessary stabilizing treatment for emergency medical conditions and labor
>> (1) In general[:] If any individual ... comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either-
>> (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
>> (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

> ....
> (c) Restricting transfers until individual stabilized
> (1) Rule[:] If an individual at a hospital has an emergency medical condition which has not been stabilized (within the meaning of subsection (e)(3)(B) of this section), the hospital may not transfer the individual unless .... [considerations not applicable to this case.]

*See also* Byrne v. Cleveland Clinic, 684 F.Supp.2d 641, 650 (E.D.Pa. 2010).

Thus, "EMTALA requires hospitals to provide medical screening and stabilizing treatment to individuals seeking emergency care in a nondiscriminatory manner. Torretti, 580 F.3d at 173. Also, EMTALA is not limited to the indigent and uninsured. Id.

Moreover, the court in Torretti, 580 F.3d at 173-74, stated:

> Under EMTALA, ... , any individual who suffers personal harm as a direct result of a hospital's violation of the statute may bring a private civil action for damages. 42 U.S.C. §1395dd(d). While an EMTALA action usually will be brought in conjunction with a state statutory claim or common-law medical malpractice or negligence action arising out of the same events, it does not create a federal cause of action for malpractice. See, e.g., Summers v. Baptist Med. Ctr. Arkadelphia, 91 F.3d 1132, 1137 (8th Cir. 1996); Brooks v. Md. Gen. Hosp., Inc., 996 F.2d 708, 710, 713 (4th Cir. 1993) (stating that EMTALA "does not create liability for malpractice based upon breach of national or community standard of care"). Liability is determined independently of whether any deficiencies in the screening or treatment provided by the hospital may be actionable as negligence or malpractice, see Summers, 91 F.3d at 1137, as the statute was aimed at disparate patient treatment.

Viewing plaintiffs' above quoted allegations in Count XV, in the light most favorable to plaintiffs, they have not plead a cognizable claim under EMTALA. Based on *Torretti*, the court finds that Mr. Baney does not "fit within EMTALA's scope-a patient antidumping statute." 580 F.3d at 175. There is no allegation that the elective inpatient spinal procedure Mr. Baney was scheduled to have on July 19, 2012, was to treat an emergent condition or that he presented as an emergency when he appeared for his pre-scheduled appointment. Rather,

9

Mr. Baney was being given an elective inpatient surgical procedure at a scheduled appointment at Mount Nittany Medical Center and during this procedure a complication occurred, allegedly caused by negligence, when he experienced an esophageal laceration. As such, Mr. Baney was already a patient of Mount Nittany Medical Center at the time of his emergency medical condition and he simply cannot be considered as going to Mount Nittany Medical Center for purposes of EMTALA. Mr. Baney alleges that while he was already a patient, Mount Nittany failed to timely transfer him to the proper facility to care for his "emergency" condition which arose during his surgery. The EMTALA does not apply under the facts of this case. Torretti, 580 F.3d at 174-75. Even if Mr. Barney suffered from a serious medical condition that was at risk to become emergent when he presented at Mount Nittany, the EMTALA did not cover him under the alleged facts in the complaint. As the *Torretti* Court pointed out, "Congress passed EMTALA to curb the problem of patient dumping by creating a statutory duty for hospitals to examine and treat individuals who come to them for emergency care. 42 U.S.C. §1395dd." Id. at 177.

      Thus, Mr. Baney's alleged "emergency condition" was really a complication of the elective surgical procedure he was undergoing. Even if the esophageal laceration became a medical emergency during the elective procedure as plaintiffs allege, there is no allegation that Mr. Baney presented a medical emergency on July 19, 2012, when he arrived for his procedure or that he was transferred from Mount Nittany without having been stabilized when he had an emergency medical condition, *i.e.*, when the laceration occurred as the procedure was being performed. The court finds plaintiffs' reading of EMTALA to be incorrect as applied to the facts of their case and unsupported

by case law. As the court in *Byrne* noted, 684 F.Supp.2d at 651 n. 9, "[s]ubsection (e)(4) of §1395dd defines 'transfer' as including the discharge of a patient from the hospital at the direction of any person employed by the hospital." As such, "EMTALA prohibits hospitals from both transferring and discharging those patients who have been determined to have an 'emergency medical condition' and have not been stabilized." Id. In the present case, plaintiffs allege that defendant Mount Nittany violated the EMTALA by failing to timely transfer Mr. Baney after the laceration occurred, to a more appropriate facility. Plaintiffs do not allege that Mount Nittany transferred Mr. Baney with "an emergency medical condition" when he was not stabilized, essentially to "dump" him on another facility.

The plaintiffs assert a "stabilization" claim and allege that defendant Mount Nittany violated the EMTALA since its surgeons did not stabilize Mr. Baney's emergency condition, *i.e.* his esophageal laceration, and then failed to promptly transfer him to an appropriate facility.[2] In *Toretti*, the court stated the following requisite elements of a "stabilization" claim under EMTALA, the plaintiff "(1) had 'an emergency medical condition; (2) the hospital actually knew

---

2

There is no dispute that Mount Nittany is a proper party defendant that can be sued under the EMTALA if a cognizable claim is stated. As the court in *Byrne*, 684 F.Supp.2d at 656, stated, "[a] 'participating hospital' [which can be sued under the EMTALA] is defined as one that has entered into a 'provider agreement' under 42 U.S.C. §1395cc, which permits hospitals to seek Medicare or Medicaid reimbursement. See id. §§1395dd(e)(2), 1395cc." Thus, "[h]ospitals that voluntarily participate in the Medicare or Medicaid programs and have effective provider agreements must comply with EMTALA.'" Id. (quoting *Torretti*, 580 F.3d at 173, n. 8 (internal quotations and citations omitted)).

of that condition; [and] (3) the patient was not stabilized before being transferred.'" 580 F.3d at 178 (quoting Baber v. Hosp. Corp. of Am., 977 F.2d 872, 883 (4th Cir. 1992)); *Byrne*, 684 F.Supp.2d at 654. The court in *Byrne*, 684 F.Supp.2d at 654-55, further explained a stabilization claim and stated:

> The term "to stabilize" is specifically defined by EMTALA, and "means, with respect to an emergency medical condition ... [a hospital must] provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result or occur during the transfer of the individual from a facility." 42 U.S.C. §1395dd(e)(3)(A). Under EMTALA, hospitals can only be held accountable for failing to stabilize conditions of which they were actually aware, not those of which they should have been aware. Torretti, 580 F.3d at 178. The stabilization and transfer provisions of EMTALA are "triggered only after a hospital 'determines that [an] individual has an emergency medical condition.' " Gatewood v. Washington Healthcare Corp., 933 F.2d 1037, 1040 (D.C.Cir. 1991) (citing 42 U.S.C. §1395dd(b)(1), (c)).
>
> Although not explicitly stated in the text of EMTALA, the caselaw makes it clear that EMTALA mandates stabilization only in the event of a transfer or discharge, and does not obligate hospitals to provide stabilization treatment for patients who are not transferred or discharged. See Fraticelli–Torres v. Hospital Hermanos, 300 Fed.Appx. 1, 4 (1st Cir. 2008); Bryant v. Adventist Health System/West., 289 F.3d 1162, 1168–69 (9th Cir. 2002); Harry v. Marchant, 291 F.3d 767, 768, 771 (11th Cir. 2002); Bryan v. Rectors and Visitors of Univ. of Virginia, 95 F.3d 349, 352 (4th Cir. 1996); Smith v. Albert Einstein Medical Center, No. 08–5689, 2009 WL 2487417 , 2009 U.S. Dist. LEXIS 71403 (E.D.Pa. Aug. 12, 2009); Marrero, 253 F.Supp.2d at 198; Mazurkiewicz v. Doylestown Hospital, 223 F.Supp.2d 661, 665 (E.D.Pa. 2002). "By mandating treatment only in the context of a patient transfer, the stabilization requirement addresses Congress' concern regarding rejection of patients without converting EMTALA into a federal malpractice statute." Harry, 291 F.3d at 774 (affirming the district court's dismissal of a stabilization claim brought on behalf of a patient who died after waiting for several hours to receive treatment in an emergency room, but who was never transferred or discharged from the hospital). Accordingly, although a hospital's egregious delay in providing screening may provide the basis for an EMTALA screening claim, it does not provide a basis for an EMTALA stabilization claim, where the patient was eventually

treated and stabilized before being discharged or transferred. See Torres Otero v. Hospital Gen. Menonita, Inc., 115 F.Supp.2d 253, 260 (D.P.R. 2000)(holding that an allegation that the stabilization treatment provided was incorrect or delayed did not reflect that the defendant hospital violated its statutory duty to stabilize before transfer or discharge).

As stated, plaintiffs state the gist of their EMTALA claim is that "the medical team managing [Mr. Baney's] care was negligent in treating him for his esophageal injury while at Mount Nittany, including that the defendants should have arranged for his transport immediately following the injury to a tertiary care facility where cardiothoracic surgeons were available." (Doc. 37, at 2-3). Mr. Baney was not transferred from Mount Nittany to Hershey Medical Center until July 26, 2012. There is no allegation that Mount Nittany and its staff failed to stabilize Mr. Baney before transferring him to another facility. Rather, plaintiffs aver that Mount Nittany and its staff negligently failed to timely transfer Mr. Baney to an appropriate facility to stabilize and treat his esophageal laceration. Plaintiffs in the instant case are improperly relying on EMTALA to try and create a federal malpractice claim when, in actuality these allegations can best be described as a garden variety medical malpractice cause of action.

Thus, plaintiffs have failed to state a cognizable claim under EMTALA, including a "stabilization" claim. See Byrne, 684 F.Supp.2d at 655-56. Additionally, based on the above discussion and based on *Torretti* and *Byrne*, the court finds that any amendment to plaintiffs' "stabilization" claim under the EMTALA would be futile. See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."); Smith v. Albert Einstein Med. Ctr., 378 Fed.Appx. 154, 157 (3d Cir.

2010)(Citing Torretti, 580 E3d at 172). (Doc. 77-1). As discussed, "EMTALA's requirements are triggered when an 'individual comes to the emergency department' and an individual only does so if that person is not already a 'patient.'" Smith v. Albert Einstein Med. Ctr., 378 Fed.Appx. at 157 (citing Torretti, 580 E3d at 175) (internal citation omitted). Mr. Baney was an inpatient of Mount Nittany at the time his alleged emergency condition occurred and he alleges that Mount Nittany failed to transfer him to the proper facility to care for his condition. The EMTALA simply does not apply under the facts of this case. Id. (citing Torretti, 580 E3d at 174-75).

**V.     CONCLUSION**

Accordingly, the court will grant defendants' motions to dismiss, with prejudice, plaintiffs' EMTALA claim in their complaint. The plaintiffs' remedies for their allegations are reflected in their claims of professional medical malpractice and negligence and, the proper forum for such claims in this case is the state court. Since plaintiffs have not stated any cognizable federal claim under EMTALA, the court, in its discretion, will decline to exercise supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. §1367(c)(3). See Smith v. Albert Einstein Med. Ctr., 378 Fed.Appx. 154, 158 (3d Cir. 2010) (Doc. 77-1). The plaintiff may re-file the remaining counts in the appropriate Pennsylvania State Court.

The court will also dismiss plaintiffs' motion to amend their complaint to add Geisinger Clinic as a new party defendant, without prejudice, to re-filing in the appropriate state court. (Doc. 74).

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: FEBRUARY 23, 2015**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-2393-01.wpd